## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JOSEPH T. PEDERSEN, MD, PHD** § | | **PLAINTIFF** |
| § | | |
| **V.** § | **1:04CV91LG-RHW** | |
| § | | |
| **STEVEN PRINCIOTTA, ET AL.** § | | **DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFF'S COMPLAINT AGAINST DEFENDANT DAVID LARSON PURSUANT TO FED. R. CIV. P. 4(M)

BEFORE THIS COURT is the Motion of the Defendants, Steven Princiotta, Donald F. Dubois, Cameron Pimperl, David G. Young, and the United States of America,[1] to Dismiss or, in the Alternative, for Summary Judgment Based on Sovereign, Absolute, and/or Qualified Immunity [58], filed in the above-captioned cause on January 10, 2005, pursuant to FED. R. CIV. P. 12(b)(1) and 56. The Plaintiff filed a Response on March 3, 2005, and Defendants filed a reply on April 14, 2005. For the reasons set forth below, the Defendants' Motion to Dismiss and for Summary Judgment should be granted.

### FACTS AND PROCEDURAL HISTORY

On April 14, 2003, the Plaintiff, Joseph T. Pedersen, M.D., Ph.D., and Humana Military Healthcare Services, Inc., entered into a Professional Services Agreement which

---

[1] Plaintiff also filed a complaint against David Larson on August 18, 2004, in civil action number 1:04cv658. Because the relief requested in 1:04cv658 related to issues in civil action number 1:04cv91LG-RHW, the Court consolidated the cases on August 18, 2004. The Plaintiff, however, never served Defendant David Larson. FED. R. CIV. P. 4(m) requires service of the complaint and summons upon the defendant within 120 days of the filing of the complaint, unless good cause is shown for the plaintiff's failure to serve within that time. Because the Plaintiff has failed to serve David Larson and has failed to seek additional time to do so, the Plaintiff's complaint against David Larson must be dismissed.

provided that Dr. Pedersen would provide services as a Radiation Oncologist at Keesler Air Force Base beginning June 10, 2003.  Dr. Pedersen also signed an agreement in which he agreed "to abide by certain 'bylaws, rules and regulations' of [Keesler Medical Center] in order to obtain clinical privileges at that medical facility." (Defs.' Br. in Supp. of Mot. to Dismiss, p. 2, filed Jan. 10, 2005.) On January 5, 2004, Defendant Princiotta notified Dr. Pedersen by letter that his clinical privileges at Keesler were being suspended because of concerns regarding medical competence.  Dr. Pedersen responded by denying the allegations.  Counsel for Dr. Pedersen "attempted to obtain a more detailed description of the vague allegations and to obtain any evidence and information concerning same." (Pl.'s Resp. Br., p. 4, filed Mar. 3, 2005.)  The Department of the Air Force responded that because the investigation had just begun, no information was available.  On January 23, 2004, "the Department of the Air Force, acting through defendant Young, notified Pedersen that proceedings to revoke his clinical privileges were being initiated under AFI 44-119 because 'of evidence of substandard medical practice' by Pedersen." (Defs.' Br., p. 2.)  The Department also notified Dr. Pedersen that he had a "right to a hearing committee review." (Defs.' Br., p. 2.)  Dr. Pedersen requested a hearing on February 20, 2004.

On February 23, 2004, Dr. Pedersen filed his complaint in this Court seeking monetary damages "for unconstitutional and tortious actions of the defendants which resulted in Dr. Pedersen being discharged by his employer, Humana, and in the wrongful revocation of his medical privileges at the Keesler Medical Center in Biloxi, Mississippi." (Pl.'s Br., p. 6.) Dr. Pedersen's complaint "also seeks damages for tortious interference with Pedersen's contract, violations of Dr. Pedersen's due process and equal protection rights guaranteed under

2

the United States and state Constitution and for other tortious and negligent conduct of the defendants." (Pl.'s Br., p. 6.)  Lastly, Dr. Pedersen's complaint requested a preliminary injunction against the United States and the United States Air Force "to prevent the convening of an unconstitutional military tribunal to try a civilian under military rule and regulation." (Pl.'s Br., p. 6.)

This Court conducted a hearing on Dr. Pedersen's motion for preliminary injunction on May 27, 2004, during which the Court denied Dr. Pedersen's motion.  Dr. Pedersen appealed the denial of injunctive relief to the Fifth Circuit Court of Appeals.  The Fifth Circuit granted Dr. Pedersen permission to appeal, and held as follows:

> [T]he district court's order denying a preliminary injunction is vacated and remanded for dismissal because of lack of subject matter jurisdiction.  Without a wavier of sovereign immunity, federal courts have no jurisdiction over claims against the U. S. government.  United States v. Sherwood, 312 U.S. 584, 586 (1941).  The plaintiff has not cited any statutes waiving sovereign immunity in this case.  28 U.S.C. §§ 1331 and 1346 are jurisdictional and do not waive subject matter jurisdiction.  Shaunbaum v. United States, 32 F.3d 180, 182 (5th Cir. 1994).  The same is true of 28 U.S.C. § 1343.  Garcia v. Texas, 538 F.Supp. 814 (S.D. Tex. 1982).
>
> The plaintiff must either exhaust his administrative remedies or appeal a final agency action under the Administrative Procedure Act, 5 U.S.C. § 701 et. seq.  Standard Oil v. FTC, 449 U.S. 232, 238 (1980).  The possibility that administrative proceedings may be unlawful does not warrant judicial review before final agency action.  Id. at 245.  Final agency action is characterized by its definitive statement of agency policy, its direct and immediate effect on the business of the plaintiff, and its status of law.  Id. at 240.  Although we interpret "final agency action" pragmatically, pre-hearing administrative procedures that have not yet resulted in agency decision do not qualify.

*In re: Joseph T. Pedersen, Dr.*, No. 04-60593, slip op. at 1-2 (5th Cir. July 12, 2004).  Dr. Pedersen filed a Petition for Panel Rehearing, which was denied on July 29, 2004.  In accordance with the Fifth Circuit's order, this Court dismissed Defendants United States of America and the United States Air Force on August 5, 2004.

On September 23, 2004, the United States Attorney for the Southern District of Mississippi "certified that the 'individual defendants . . . were acting within the scope of their office and employment with the Federal Government at the time of the incidents' alleged in Pedersen's Complaint." (Defs.' Br., p. 4.) On September 27, 2004, the U. S. Attorney filed a "Notice of Substitution substituting the United States for the individual defendants as the sole defendant regarding Pedersen's state law causes of action." (Defs.' Br., p. 4.) On January 10, 2005, the Defendants filed a motion to dismiss or alternatively, for summary judgment. According to the Defendants, the substituted Defendant, the United States of America, is entitled to a dismissal of all state law claims based upon sovereign immunity. The Defendants also contend that the individual defendants, Princiotta, Dubois, Pimperl, and Young, are entitled to a dismissal of Plaintiff's state law claims pursuant to FED. R. CIV. P. 12(b)(1) because they are absolutely immune from those claims. In addition, the individual defendants contend that they are entitled to summary judgment on Plaintiff's *Bivens* claims under FED. R. CIV. P. 56 based upon qualified immunity.

Dr. Pedersen filed a response on March 3, 2005, in which he contends that a dismissal pursuant to 12(b)(1) is inappropriate under the facts as pled by him. He also contends that genuine issues of material fact exist, and therefore, the Defendants' motion for summary judgment should be denied.

### DISCUSSION

STANDARD FOR MOTION TO DISMISS PURSUANT TO RULE 12(B)(1):

"FED. R. CIV. P. 12(b)(1) authorizes the dismissal of a case for lack of subject matter jurisdiction when the district court lacks the statutory and constitutional power to adjudicate the

case." *Peoples Nat'l Bank v. Office of the Comptroller of the Currency of U.S.*, 227 F. Supp.2d 645, 648 (E.D. Tex. 2002), *citing Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998). "A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Home Builders*, 143 F.3d at 1010. To determine whether a motion to dismiss should be granted, the Court "must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Pace v. Suntech, Inc.*, 900 F. Supp. 20, 23 (S.D. Miss. 1995), *citing McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Jefferson*, 106 F.3d at 1250, *citing Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993); *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

STANDARD FOR MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56:

FED. R. CIV. P. 56 permits any party to a civil action to move for a summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. In effect, Rule 56(c) provides that as a matter of law, upon admitted or established facts, the moving party is entitled to prevail. Summary judgment "is not a catch penny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury if they really have evidence which they will offer on a trial, it is to carefully test this out, in advance of trial by inquiring and determining whether such evidence exists." *Whitaker v.*

*Coleman,* 115 F.2d 305, 307 (5th Cir. 1940).  A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted.  *Catrett*, 477 U.S. at 324-25, 106 S.Ct. at 253-54.  The non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

IS DEFENDANT UNITED STATES OF AMERICA ENTITLED TO SOVEREIGN IMMUNITY?

The United States enjoys sovereign immunity from suit unless it expressly waives its immunity by consenting to being sued.  When such consent exists, "the terms of its consent define the federal courts' jurisdiction to entertain suits against it." *Metropolitan Life Ins. Co. v. Atkins*, 225 F.3d 510, 512 (5th Cir. 2000) (citation omitted).  Under the Federal Tort Claims Act (FTCA), the United States' immunity is waived "with regard to various types of tort claims, including claims for personal injuries allegedly caused by the negligence of federal employees acting within the scope of their employment." *Bryant v. U.S.*, 96 F.Supp.2d 552, 553 (N.D. Miss. 2000), *citing U.S. v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979).  The FTCA requires a plaintiff [to] first file a claim with the appropriate federal agency and have that claim finally denied before pursuing a lawsuit." *Greater Slidell Auto Auction, Inc. v. Am. Bank & Trust Co. of Baton Rouge, La.*, 38 F.3d 180, 182 n.1 (5th Cir. 1994), *citing Shah v. Quinlin,* 901 F.2d 1241, 1244 (5th Cir.1990).  Failure to do so is "a

jurisdictional bar to proceeding in court." *Shah*, 901 F.2d at 1244.

In this case, Dr. Pedersen filed his complaint in this Court on February 23, 2004. It is not disputed that Dr. Pedersen did not file an administrative claim with the Department of the Air Force until October 6, 2004. Because Dr. Pedersen did not file an administrative claim prior to filing his lawsuit in this Court, the United States' immunity is not waived, and this Court lacks jurisdiction. Therefore, the Defendant's motion to dismiss Dr. Pedersen's state law claims for lack of jurisdiction must be granted.

ARE THE INDIVIDUAL DEFENDANTS ENTITLED TO ABSOLUTE IMMUNITY?

The Federal Employees Liability Reform and Tort Compensation Act of 1988 (the Westfall Act) was enacted to amend the Federal Tort Claims Act "to provide absolute immunity to any federal employee acting within the '*scope of his office or employment*.'" *Palmer v. Flaggman*, 93 F.3d 196, 200 (5th Cir. 1996), *quoting* 28 U.S.C. § 2679. The Westfall Act provides in pertinent part that "[t]he remedy against the United States provided by sections 1346(b) and 2672 of this title for . . . personal injury . . . resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages. . . ." 28 U.S.C. § 2679(b(1). Because the remedy under the FTCA is exclusive, the plaintiff cannot recover against the government employee, even when the FTCA itself precludes Government liability. *U.S. v. Smith*, 499 U.S. 160, 166, 111 S.Ct. 1180, 1185, 113 L.Ed.2d 134 (1991). The Westfall Act also provides that upon certification by the Attorney General that "the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action . . . commenced upon

such claim in a United States district court shall be deemed an action against the United States . . ., and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). A plaintiff who challenges the certification "has the burden to prove that the employee's conduct was not within the scope of his employment." *Counts v. Guevara*, 328 F.3d 212, 214 (5th Cir. 2003), *citing Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995). The parties agree that this Court must apply Mississippi law in determining whether the individual defendants were acting within the scope of their employment at the time of the alleged incidents.

Mississippi law on the issue of whether an employee is acting within the scope of employment is well established as follows:

> . . . To be "within the scope of employment," the act must have been committed in the course of and as a means to accomplishing the purposes of the employment and therefore in furtherance of the master's business. Also included in the definition of "course and scope of employment" are tortious acts incidental to the authorized conduct. Stated another way, a master will not be held liable if the employee "had abandoned his employment and was about some purpose of his own not incidental to the employment." That an employee's acts are unauthorized does not necessarily place them outside the scope of employment if they are of the same general nature as the conduct authorized or incidental to the conduct.

*Adams v. Cinemark USA, Inc.*, 831 So.2d 1156, 1159 (Miss. 2002) (internal citations omitted). Just recently, the Mississippi Supreme Court cited § 228 Restatement (Second) of Agency (1958), which provides the following test for determining whether an employee was acting within the scope of employment:

Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

>    (c) it is actuated, at least in part, by a purpose to serve the master. . . .

*The Commercial Bank v. Hearn*, No. 2004-IA-02095-SCT, 2006 WL 60768, at *6 (Miss. Jan. 12, 2006), *quoting* Restatement (Second) of Agency (1958); *citing Marter v. Scott,* 514 So2d 1240, 1242-43 (Miss. 1987). The court also noted that "[t]he pertinent question is whether [the employee] was engaged in the course and scope of his employment while [performing the activity]." *Hearn*, 2006 WL 60768, at *6.

In this case, Dr. Pedersen named as defendants certain employees of the federal government. The U. S. Attorney certified that these employees were acting within the scope of their office and employment at the time of the incidents alleged in Dr. Pedersen's complaint. Based upon this certification, the U. S. Attorney filed a notice of substitution, substituting the United States as a defendant in place of the individual defendants. Dr. Pedersen, however, challenges the Defendants' certification that the individual defendants were acting within the scope of their employment. According to Dr. Pedersen, the individual defendants were not acting within the scope of their employment at the time that the incidents occurred which gave rise to his complaint. Dr. Pedersen bases his contention on the following:

>    When Colonel Cloonan, [Dr. Pedersen's supervisor,] refused to remove Dr. Pedersen, [Defendants] Dubois, Pimperl, and Princiotta took it upon themselves to initiate a conspiracy to have Dr. Pedersen removed through an adverse action when they knew that there was no evidence to support any such action. Clearly, neither Dubois, Pimperl or Princiotta had within their scope of duties the right to conduct a conspiracy, to convene a military tribunal based upon biased investigative lies and remove Dr. Pedersen without due process and cause.
>
>    Dubois, Pimperl, and Princiotta acted independently of their superior, Colonel Cloonan, and circumvented his authority. This is not within the course and scope of their employment with the United States Air Force.

(Pl.'s Br., pp. 23-24.)

9

> The Defendants disagree and contend as follows:
>
> In this case, there is no evidence that the actions taken by the individual defendants were either unauthorized under AFT 44-119 or not in accordance with that regulation. Pedersen has failed [to] meet his burden of showing that any of the individual defendants acted outside the scope of their employment as officers and health care professionals in the Air Force. It is beyond cavil that all of the complained of actions of the individual defendants were taken as part of their participation in the Air Force's program to improve clinical performance at Keesler Medical Center where Pedersen practiced medicine. This program is authorized under HCQIA and mandated under AFI 44-119. The United States Attorney's certification of scope of employment should therefore be sustained by this Court.

Defs.' Rebuttal Br., p. 6, filed Apr. 14, 2005.)  In support of their contention, the Defendants provided Declarations of each individual defendant.

The Declarations provided by the Defendants describe in detail each individual's role during the events about which Dr. Pedersen complains. Defendant Dubois, who was Chief of the Radiation Oncology Element at Keesler Medical Center, became concerned about the quality of Dr. Pedersen's professional services. In the Fall of 2003, Dubois discussed those concerns with Defendant Pimperl, who was the senior radiation oncologist at the time. Pimperl briefly discussed Dubois's concerns with Dr. Pederson by phone. In December 2003, Dubois voiced those concerns to Defendant Princiotta, who is Chief of the Medical Staff at Keesler and Chairperson of the Credentials Functions. In his capacity as Chairperson, Princiotta is required to conduct investigations concerning any incidents that may result in adverse privileging actions. In early January 2004, Princiotta notified Dr. Pedersen that his privileges were being placed in abeyance. Pimperl was appointed to conduct an investigation into the clinical performance of Dr. Pedersen. Pimperl stated that even though he had prior contact with Dr. Pedersen and with Dubois, he conducted the investigation without bias. On

January 21, 2004, the Credentials Function committee "met to review the clinical performance of Dr. Pedersen and made recommendations." (Decl. of Princiotta, ¶ 20.) The recommendations were forwarded to Defendant Young, the 81st Medical Group Commander. (Decl. of Princiotta, ¶ 20.) Young is the "approval authority for award of privileges and medical staff appointment, alterations in privileges, and adverse privileging actions for all Keesler Medical Center providers." (Decl. of David Young, ¶ 7., dated Mar. 30, 2005, Ex. A., Defs.' Rebuttal Br., filed Apr. 14, 2005.) On January 23, 2004, Young notified Dr. Pedersen that he "was proposing a revocation of [Dr. Pedersen's] medical privileges to practice at Keesler Medical Center." (Decl. of Young, ¶ 16.) In the declarations, each defendant stated that his actions were taken in accordance with AFI 44-119.

    Dr. Pedersen has failed to meet his burden in showing that the defendants were not acting in the scope of their employment. Dr. Pedersen has failed to provide any evidence that tends to show that any of the individual defendants had abandoned his employment at the time of the events giving rise to Dr. Pedersen's complaint, or that any of the defendants' actions were for some purpose not incidental to his employment. In addition, Dr. Pedersen has failed to show that their actions were not authorized. Contrary to Dr. Pedersen's contention, each defendant clearly stated that his actions were authorized in accordance with AFI 44-119. In addition, each defendant stated that he acted in accordance with his position at Keesler, or at the direction of a superior. The declarations show that each defendant was engaged in the course and scope of his employment while performing the activity of taking steps to assure competent medical care at Keesler Medical Center. Therefore, the certification is valid, and the United States is the proper defendant insofar as Dr. Pedersen's state tort law claims are

concerned. For this reason, Dr. Pedersen's state law claims against the individual defendants must be dismissed because the individual defendants are entitled to absolute immunity from these claims.

ARE THE INDIVIDUAL DEFENDANTS ENTITLED TO QUALIFIED IMMUNITY ON DR. PEDERSEN'S CONSTITUTIONAL TORT CLAIMS?

The Court applies a two-step analysis in deciding a summary judgment motion based on qualified immunity. *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). The two-step analysis requires the following:

> First, [the Court must] assess whether a statutory or constitutional right would have been violated on the facts alleged. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If [the Court] find[s] a violation is properly alleged, [the Court] proceed[s] to the second step, in which [the Court] determine[s] whether the defendant's actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

*Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004).

According to Dr. Pedersen, his constitutional rights were violated when the Defendants denied him liberty and property without due process of law. Dr. Pedersen asserts that "[t]he 'property' is plaintiff's employment; the 'liberty' is [plaintiff's] freedom to practice his chosen profession." (Pl.'s Br., p. 29.) To the extent Dr. Pedersen's claim is based upon "the loss of his 'freedom of choice in the job market,' . . . his claim is barred by the Supreme Court's decision in *Siegert*." *Vander Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir. 1996). "Neither harm to reputation nor the consequent impairment of future employment opportunities are constitutionally cognizable injuries." *Vander Zee*, 73 F.3d at 1369, *citing Siegert v. Gilley*, 500 U.S. 226, 233-35, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991); *State of Texas v.*

*Thompson*, 70 F.3d 390, 392 (5th Cir. 1995).  As the U. S. Supreme Court held in *Siegert*, "[t]he facts alleged by [Pedersen] cannot . . . be held to state a claim for denial of a constitutional right."  *Siegert*, 500 U.S. at 233-34, 111 S.Ct. at 1794.  "[S]o long as the damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a *Bivens* action."  *Siegert*, 500 U.S. at 234, 111 S.Ct. at 1794.  Dr. Pedersen has failed to allege the violation of a clearly established constitutional right.  Therefore, the Defendants are entitled to qualified immunity on Dr. Pedersen's claim of denial of a liberty interest.

As noted above, Dr. Pedersen also alleges that he was deprived of a property interest. "[T]o decide whether there was a deprivation of constitutional or statutory rights, [the Court] must determine whether [Pedersen] had a property right under the Fifth Amendment." *Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998), *citing Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).  "To have a property interest in a benefit, a person . . . must have more than a unilateral expectation of it." *Samuel*, 138 F.3d at 176, *quoting Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).  "In the employment context, the sufficiency of a claim of entitlement must be decided by reference to state law." *Nunez v. Simms*, 341 F.3d 385, 387-88 (5th Cir. 2003), *citing Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

It is well established that Mississippi is an at-will employment state. *See Buchanan v. Ameristar Casino Vicksburg, Inc.*, 852 So.2d 25, 26 (Miss. 2003).  "The general rule of employment at will is that a contract for employment for an indefinite period may be terminated at the will of either party, whether the termination is for any reason or no reason at

all." *Buchanan*, 852 So.2d at 26, *citing McArn v. Allied Bruce-Terminix Co.,* 626 So.2d 603, 606 (Miss.1993). In this case, under the terms of Dr. Pedersen's Professional Services Agreement with Humana, Dr. Pedersen's employment was for an indefinite period of time, so long as Humana provided him thirty days notice if he was being terminated without cause. The agreement also provided, however, that Dr. Pedersen's employment would automatically terminate upon request for termination by the Air Force. Based upon the terms of the contract, Dr. Pedersen's employment with Humana was at-will. For this reason, Dr. Pedersen did not have an entitlement to employment with Humana, and therefore did not have a property interest in his employment. Because Dr. Pedersen did not have a property interest in his employment, he has failed to allege the violation of a clearly established constitutional right. The Defendants are entitled to qualified immunity on this claim.

## CONCLUSION

The Plaintiff failed to file an administrative claim prior to filing his lawsuit in this Court. For this reason, the sovereign immunity of the United States of America is not waived, and this Court lacks jurisdiction over those claims. With regard to the state law claims against the individual defendants, the Plaintiff failed to show that their actions were not within the course and scope of their employment. Thus, Defendants Princiotta, Dubois, Pimperl, and Young are entitled to a dismissal of Plaintiff's state law claims because they are absolutely immune from suit on those claims. With regard to Plaintiff's *Bivens* claims, the Plaintiff has failed to allege the violation of a clearly established constitutional right. For this reason, the individual defendants are entitled to qualified immunity on those claims. Lastly, because the Plaintiff has failed to serve David Larson and has failed to seek additional time to do so, the

Plaintiff's complaint against David Larson must be dismissed.

**IT IS THEREFORE ORDERED AND ADJUDGED,** that for the reasons cited above, the Motion of the Defendants, Steven Princiotta, Donald F. Dubois, Cameron Pimperl, David G. Young, and the United States of America, to Dismiss or, in the Alternative, for Summary Judgment Based on Sovereign, Absolute, and/or Qualified Immunity [58] should be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED AND ADJUDGED**, that for the reasons cited above, the Plaintiff's complaint against David Larson should be and is hereby **DISMISSED without prejudice** pursuant to FED. R. CIV. P. 4(m).

**SO ORDERED AND ADJUDGED** this the 27th day of April, 2006.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE